UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

TERRI KIRSCH            PLAINTIFF

v.            CIVIL ACTION NO. 3:16-CV-00299-CRS

ROBERT DEAN            DEFENDANT

Memorandum Opinion

I.      Introduction

This matter is before the Court on the motion of Plaintiff Terri Kirsch to dismiss Count VI of Defendant Robert Dean's verified amended counterclaim under Federal Rule of Civil Procedure 12(b)(6), ECF No. 17-1. Dean responded, ECF No. 30, and Kirsch replied, ECF No. 39. For the reasons discussed below, the Court will deny Kirsch's motion to dismiss Count VI of the verified amended counterclaim.

II.      Allegations in the Verified Amended Counterclaim

ZFX, Inc. ("ZFX") is a Nevada corporation that provides flying effects services for stage performances, including "custom-built harness fabrication, a full studio for rehearsal and proof of concept, and in-house fabrication for custom effects." V. Am. Countercl. ¶¶ 10–11, ECF No. 13. Plaintiff Terri Kirsch and Defendant Robert Dean are each 50 percent shareholders in ZFX. *Id.* ¶ 14. Kirsch began serving as ZFX's president in 1996, a position that she held until 2014. *Id.* ¶ 13.

In 2005, ZFX began leasing property in Louisville, Kentucky. *Id.* ¶ 15. The following year, ZFX moved most of its operations from Las Vegas, Nevada to Louisville. *Id.* ¶ 15. In the years after ZFX moved its operations to Louisville, ZFX expanded its number of employees and

increased its annual sales. *Id*. ¶ 17. Kirsch and Dean also eventually moved to Louisville. *Id*. ¶ 16.

At some point after ZFX began its operations, Janet McIsaac, a California resident, started serving as its vice president of finance. *Id*. ¶ 19. As vice president of finance, she was responsible for disbursing payments for ZFX's expenses and preparing its financial statements. *Id*. McIsaac also served as ZFX's manager of human resources. *Id*. ¶ 21.

McIsaac was a friend of Kirsch. *See id*. ¶ 22. Kirsch insisted that only she oversee McIsaac's work for ZFX, and she represented to Dean and ZFX's outside accountants and auditors that she was monitoring McIsaac's work for the company. *Id*. ¶¶ 22, 24. Kirsch prevented anyone else working for ZFX from monitoring McIsaac's work. *Id*. ¶ 25. Kirsch also insisted that all of ZFX's bank and credit card statements be sent to McIsaac's house in California. *Id*. ¶ 23. At least two times, Kirsch refused to follow a recommendation that another employee perform ZFX's bank and credit card reconciliations because McIsaac was the person entering the transaction and paying the company's bills. *Id*. ¶ 28.

In 2009, Kirsch's husband was diagnosed with cancer. *Id*. ¶ 29. Kirsch gradually reduced her workload. *Id*. In 2012, Dean and Kirsch signed a document entitled the "Stock Restriction Agreement Between ZFX, Inc. and It's [sic] Shareholders" ("the Stock Restriction Agreement"). *Id*. ¶ 123. In relevant part, the Stock Restriction Agreement provides that if Dean or Kirsch ended their relationship with ZFX, the remaining shareholder would purchase all of his or her shares ("the buy-out provision"). *Id*. ¶ 124. The Stock Restriction Agreement also requires Dean and Kirsch to arbitrate disputes that concern the document or either of their performances under the document ("the arbitration provision"). *Id*. ¶ 127.

After her husband passed away in 2014, Kirsch informed Dean that she was considering selling her shares in ZFX. *Id*. ¶ 30. In early 2015, Kirsch resigned from her position as president of ZFX. *Id*. ¶ 32. She then moved to California. *Id*. ¶ 36.

Also in 2015, Kirsch used ZFX funds to pay for renovations on rental properties that she owned. *Id*. ¶ 34. She also misrepresented to ZFX's lending institutions that she was no longer a director, officer, or shareholder of the company, or a guarantor on the loan for ZFX's Louisville property. *Id*. ¶¶ 37–39.

In August 2015, Kirsch and Dean began negotiating terms under which he would purchase her shares in ZFX and ZFX Property Holdings, LLC, the Kentucky limited liability company that owned the property on which ZFX operated. *Id*. ¶¶ 18, 40. But before Dean bought Kirsch's shares in ZFX, ZFX discovered that McIsaac had been embezzling company funds while Kirsch had been responsible for overseeing her work. *Id*. ¶¶ 18, 48.

When confronted about her embezzlement of company funds, McIsaac also informed ZFX that Kirsch had been permitting her to charge the company for personal expenses as a type of bonus. *Id*. ¶¶ 50–51. These expenses, unknown to Dean, included six or more trips to exotic destinations or on luxury cruise liners, as well as a trip to Mexico to attend a wedding. *Id*. ¶¶ 52–53, 60. These expenses were never reported to ZFX or noted as compensation on the company's financial statements or tax reports. *Id*. ¶ 57.

In March 2016, after Kirsch refused to cooperate in its investigation of McIsaac, ZFX informed Kirsch that her pay was being terminated, and her health and dental plans would end. *Id*. ¶ 66. Dean, who had taken over the role of president of the company, then denied Kirsch access to the ZFX email system and electronic access to its books and records. *Id*. ¶ 67.

Two months later, Kirsch filed suit against Dean. Compl., ECF No. 1. In response to this suit, Dean filed an answer and a verified amended counterclaim in which he asserts several causes of action against Kirsch. He asserts that Kirsch breached her fiduciary duty to ZFX "by failing to act on an informed basis and in good faith in overseeing ZFX's financial affairs" (Count 1). V. Am. Countercl. ¶¶ 75–80, ECF No. 13. Dean also alleges that Kirsch engaged in waste (Count II), *id*. ¶¶ 81–88, and that she aided and abetted McIsaac in embezzling funds from ZFX (Count III), *id*. ¶¶ 89–94. He seeks declaratory relief (Count IV). *Id*. ¶¶ 95–105. He further contends that Kirsch breached her fiduciary duty to him as a 50 percent shareholder in ZFX (Count V). *Id*. ¶¶ 106–21. Finally, he alleges that Kirsch breached the Stock Restriction Agreement when she pursued claims in court that the document requires to be arbitrated under its arbitration provision (Count VI). *Id*. ¶¶ 122–36.

III.   Rule 12(b) Conversion

As an initial matter, Kirsch provides four exhibits in support of her motion to dismiss Count VI of the verified amended complaint. *See* Ex. A, ECF No 17-2; Ex. B, ECF No. 17-3; Ex. C, ECF No. 17-4; Ex. D, ECF No. 17-5. Generally, a district court may not consider matters outside the pleadings when ruling on a 12(b)(6) motion to dismiss without converting the motion into one for summary judgment under Federal Rule of Civil Procedure 56. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."). If the matters outside the pleading are not necessary to resolving the motion to dismiss, the court may exclude them from consideration. *See Merrick v. Diageo Americas Supply, Inc.*, 5 F. Supp. 3d 865, 877 (W.D. Ky. 2014).

Here, Kirsch's exhibits are not necessary to resolving her motion to dismiss. Therefore, the Court will exclude them from consideration.

IV.     Federal Rule of Civil Procedure 12(b)(6) Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a cause of action for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, a pleading must contain sufficient facts to state a claim that is "plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A pleading states a plausible claim for relief when the court may "draw the reasonable inference that the [opposing party] is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court is not required to accept legal conclusions or "threadbare recitals of the elements of a cause of action." *Id*. When resolving a motion to dismiss, the court must "construe the complaint in the light most favorable to the [non-moving party], accept its allegations as true, and draw all reasonable inferences in favor of the [non-moving party]." *See Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015) (quoting *Directv, Inc. v. Treesch*, 487 F.3d 471, 476 (6th Cir. 2007)).

Affirmative defenses generally do not support dismissal under Federal Rule of Civil Procedure 12(b)(6). *Genton v. Keystone Sporting Arms, Inc.*, No. 05-274-JBC, 2005 U.S. Dist. LEXIS 22657, at *4 (E.D. Ky. Oct. 5, 2005). Affirmative defenses, however, may support dismissal if "(1) the facts establishing the defense are evident from the allegations of the complaint, and (2) those facts conclusively establish the validity of the defense." *Id*. (citing *Banco Santander de P.R. v. Lopez-Stubbe* (*In re Colonial Mortg. Bankers Corp.*), 324 F.3d 12, 16 (1st Cir. 2003).

5

V.	Discussion

Kirsch argues that Count VI of the verified amended counterclaim—which alleges that she breached the Stock Restriction Agreement's arbitration provision—should be dismissed under Federal Rule of Civil Procedure 12(b)(6) because (1) Dean is equitably estopped from relying on the arbitration provision, (2) he cannot demonstrate that she breached the arbitration provision, (3) he waived his right to compel arbitration under the arbitration provision, and (4) she did not breach the arbitration provision. Mem. Supp. Mot. Part. Dismissal 6, 12, 15, 18, ECF No. 17-1.

A.	Whether Dean is Equitably Estopped from Relying on the Arbitration Provision in the Stock Restriction Agreement

Kirsch first argues that the Court should dismiss Count VI of the verified amended counterclaim because Dean is equitably estopped from relying on the arbitration provision in the Stock Restriction Agreement. *Id*. at 6. In response, Dean argues that Kirsch's invocation of equitable estoppel is improper at the Rule 12(b)(6) stage and that she cannot conclusively establish the elements of estoppel under Kentucky law. Resp. Mot. Part. Dismissal 4, 7, ECF No. 30.

In Kentucky, the doctrine of equitable estoppel "precludes a person from maintaining a position or attitude inconsistent with another position or attitude which is sought to be maintained at the same time or which was asserted at a previous time." *Laughead v. Commonwealth, Dep't of Transp.*, *Bureau of Highways*, 657 S.W.2d 228, 230 (Ky. 1983) (citing 31 C.J.S., Estoppel § 108). Equitable estoppel is an affirmative defense under which the moving party bears the burden of proof. *See Bd. of Trs. of Ky. Ret. Sys. v. Lizer*, No. 2014-CA-001622-MR, 2016 Ky. App. Unpub. LEXIS 396, at *14 (Ky. App. June 10, 2016). A party alleging equitable estoppel must prove the following elements:

> (1) [c]onduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, [the elements of equitable estoppel] are: (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially.

*Smith v. Howard*, 407 S.W.2d 139, 143 (Ky. 1966).

Here, Kirsch is unable to show that the facts, as alleged in Dean's verified amended counterclaim, conclusively establish these elements of estoppel under Kentucky law. Regarding the elements that concern the conduct of the party being estopped, Kirsch asserts that Dean concealed the arbitration and mandatory buy-out provisions in the document. Mem. Supp. Mot. Part. Dismissal 7, ECF No. 17-1. But she fails to identify any facts alleged in the verified amended counterclaim that support this assertion.

Similarly, concerning the elements that relate to the party claiming estoppel, Kirsch argues that she had no knowledge of the Stock Restriction Agreement and its arbitration and buy-out provisions. *Id.* at 8–9. Yet, the verified amended counterclaim alleges that Kirsch signed the document in 2012. V. Am. Countercl. ¶ 123, ECF No. 13. Taking all reasonable inferences in favor of Dean, that Kirsch signed the Stock Restriction Agreement reasonably suggests that she was aware of the document and likely read or should have read the arbitration and buy-out provisions.

Kirsch also maintains that Dean has taken an inconsistent litigation position by filing a motion to dismiss her claims and then by raising the Stock Restriction Agreement's arbitration provision in his answer and verified amended counterclaim. Mem. Supp. Mot. Part. Dismissal 9, ECF No. 17-1. Kirsch fails to explain why Dean's allegations in the verified amended

7

counterclaim are inconsistent with his decision to first file a motion to dismiss her claims. Moreover, Dean has not taken inconsistent litigation positions in filing a motion to dismiss Kirsch's claims under Federal Rule of Civil Procedure 12(b)(6) before submitting an answer. Rather, he has followed the proper order of litigation. *See* Fed. R. Civ. P. 12(b) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed.").

Finally, Kirsch contends that Dean's inconsistent litigation positions could severely prejudice her. But she fails to point to any allegations in Dean's verified amended counterclaim that would severely prejudice her as she continues in this case, indicating that she is unable to prove this element of estoppel.

Because Kirsch is unable to show that the facts as alleged in the verified amended counterclaim conclusively establish the elements of estoppel, Kirsch's motion for dismissal under Federal Rule of Civil Procedure 12(b)(6) based on this affirmative defense fails.

    B.    <u>Whether Dean Plausibly Alleges that Kirsch Breached the Stock Restriction Agreement</u>

Kirsch secondly asserts that the Court should dismiss Count VI of the verified amended counterclaim because Dean "cannot demonstrate" that she breached the Stock Restriction Agreement. Mem. Supp. Mot. Part. Dismissal 12, ECF No. 17-1. She maintains that the document's arbitration provision does not require her claims to be submitted to arbitration. *Id.* at 13–18. Dean contends, however, that he has plausibly alleged that Kirsch breached the Stock Restriction Agreement. Resp. Mot. Part. Dismissal 12, ECF No. 30.

Arbitration is a matter of contract. *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). Here, Dean asserts in the verified amended counterclaim that he and Kirsch signed the Stock Restriction Agreement in 2012. V. Am.

8

Countercl. ¶¶ 123, ECF No. 13. In relevant part, the Stock Restriction Agreement requires Dean and Kirsch to arbitrate any disputes under its arbitration provision. *Id.* ¶ 127. Dean further alleges that Kirsch asserted claims against him in the present action that are subject to arbitration, thereby violating the arbitration provision. *Id.* ¶¶ 130–35. Dean thus plausibly alleges that Kirsch breached the Stock Restriction Agreement's arbitration provision. Because Dean plausibly alleges that Kirsch breached the arbitration provision, dismissal of Count VI is inappropriate under Federal Rule 12(b)(6).[1]

        C.      Whether Dean Waived his Right to Compel Arbitration

Kirsch thirdly argues that the Court should dismiss Count VI of the verified amended counterclaim because Dean waived his right to compel arbitration. Mem. Supp. Mot. Part. Dismissal 15–18, ECF No. 17-1. Dean, however, maintains that the allegations in the verified amended counterclaim do not conclusively establish that he waived his rights to arbitration under the arbitration provision of the Stock Restriction Agreement. Resp. Mot. Part. Dismissal 10, ECF No. 30.

In Kentucky, waiver is "commonly defined as a voluntary and intentional surrender or relinquishment of a known right, or an election to forego an advantage which the party at his option might have demanded or insisted upon." *Weis Builders, Inc. v. Complete Contr., Inc.*, 247 S.W.3d 542, 545 (Ky. Ct. App. 2008) (citing *Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335, 344 (Ky. Ct. App. 2001)). Waiver, like estoppel, is an affirmative defense. *See Edmondson v. Pa. Nat'l Mut. Cas. Ins. Co.*, 781 S.W.2d 753, 757 (Ky. 1989). A party waives its right to

---

[1] Under a motion to dismiss standard, a complaint must contain sufficient facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint does not require "detailed factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In asserting that "Dean cannot demonstrate that Kirsch breached the stock agreement," Mem. Supp. Mot. Part. Dismissal 12, ECF No. 17-1, Kirsch appears to confuse the Rule 12(b)(6) inquiry with the summary judgment standard under Federal Rule of Civil Procedure 56(a).

arbitration when it acts in a manner "inconsistent with the intent to exercise arbitration rights such that one could reasonably infer that the party has voluntarily relinquished their arbitration rights." *Am. Gen. Home Equity, Inc. v. Kestel*, 253 S.W.3d 543, 556 (Ky. 2008).

Here, Kirsch is unable to show that the facts as alleged in the verified amended counterclaim conclusively establish that Dean waived his right to compel arbitration under the arbitration provision of the Stock Restriction Agreement. Thus, Kirsch's motion for dismissal based on this affirmative defense fails.

D. <u>Whether Kirsch Breached the Arbitration Provision</u>

Kirsch fourthly asserts that this Court should dismiss Count VI of the verified amended counterclaim because she did not know of the Stock Restriction Agreement and thus could not have breached its arbitration agreement. Mem. Supp. Mot. Part. Dismissal 18, ECF No. 17-1. Dean argues that Kirsch fails to cite allegations in the verified amended counterclaim, improperly relies on evidence outside the verified amended counterclaim, and that her argument is "specious" given her omission that she knew about the Stock Restriction Agreement in her emergency motion to appoint a custodian for ZFX and temporary restraining order. Resp. Mot. Part. Dismissal 13, ECF No. 30.

Kirsch fails to point to any allegations in the verified amended counterclaim that would show that she did not know about the arbitration provision of the Stock Restriction Agreement. As such, this argument fails.

VI.     Conclusion

The Court will deny Kirsch's motion to dismiss Count VI of the verified amended counterclaim under Federal Rule of Civil Procedure 12(b)(6). An order will be entered in accordance with this memorandum opinion.

December 16, 2016

Charles R. Simpson III, Senior Judge
United States District Court